No. 21-15124

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PLANNED PARENTHOOD FEDERATION
OF AMERICA, INC. ET AL.,
*Plaintiffs-Appellees*,

v.

CENTER FOR MEDICAL PROGRESS, ET AL.,
*Defendants-Appellants.*

———————————

Appeal From Judgment Of The United States District Court
For The Northern District of California
No. 3:16-cv-00236-WHO
(Hon. William H. Orrick, District Judge)

———————————

## PLAINTIFFS-APPELLEES' BRIEF

———————————

STEVEN L. MAYER
SHARON D. MAYO
JEREMY T. KAMRAS
MATTHEW R. DITON
LIAM O'CONNOR
NINA LEVITEN
ARNOLD & PORTER
   KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111

BETH H. PARKER
PLANNED PARENTHOOD
   CALIFORNIA CENTRAL COAST
20 Laurel Street
Inverness, CA 94937

WILLIAM C. PERDUE
MEGHAN C. MARTIN
ARNOLD & PORTER
   KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000

RHONDA R. TROTTER
OSCAR D. RAMALLO
ARNOLD & PORTER
   KAYE SCHOLER LLP
777 SOUTH FIGUEROA Street
44TH Floor
LOS ANGELES, CA 90017

*Counsel for Plaintiffs-Appellees*
*(listed on signature page)*

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Plaintiffs-Appellees respectfully submits the following disclosure statement: Plaintiffs-Appellees Planned Parenthood Federation of America, Inc., Planned Parenthood: Shasta-Diablo, Inc. (DBA Planned Parenthood Northern California), Planned Parenthood Mar Monte, Inc., Planned Parenthood of the Pacific Southwest, Planned Parenthood Los Angeles, Planned Parenthood/Orange and San Bernardino Counties, Inc., Planned Parenthood California Central Coast, Inc., Planned Parenthood Pasadena and San Gabriel Valley, Inc., Planned Parenthood Center for Choice, Planned Parenthood of the Rocky Mountains, and Planned Parenthood Gulf Coast state that they have no parent corporations, and no publicly held corporation owns ten percent or more of their or their affiliates' stock.

DATED: May 17, 2024.

_/s/ Steven L. Mayer_

STEVEN L. MAYER
_Counsel for Plaintiffs-Appellees_

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT ........................................ 3

STATUTORY AUTHORITIES ............................................. 3

ISSUES PRESENTED ......................................................... 3

STATEMENT OF THE CASE .............................................. 4

    A.    Pre-Trial Proceedings ........................................ 4

    B.    Plaintiffs' Success at Trial ................................. 8

    C.    Plaintiffs' Motion for Attorneys' Fees and Costs ...... 9

    D.    Defendants' Appeal on the Merits ....................... 12

SUMMARY OF ARGUMENT ............................................. 13

STANDARD OF REVIEW ................................................. 16

ARGUMENT .................................................................... 16

I.    THE DISTRICT COURT DID NOT ABUSE ITS
DISCRETION IN SETTING THE AMOUNT OF FEES
AND COSTS. .............................................................. 16

II.    THIS COURT'S REVERSAL ON ONE CLAIM AND
ITS CORRESPONDING VACATUR OF LESS THAN
FOUR PERCENT OF THE DAMAGES DOES NOT
WARRANT REDUCTION OF THE FEES AND COSTS
AWARDS. .................................................................. 25

III.    THE DISTRICT COURT DID NOT ABUSE ITS
DISCRETION IN AWARDING FEES AND COSTS
WITHOUT REQUIRING PRODUCTION OF
TIMESHEETS. ............................................................ 29

CONCLUSION ................................................................. 40

- ii -

STATEMENT OF RELATED CASES PURSUANT TO
CIRCUIT RULE 28-2.                                                   42

CERTIFICATE OF COMPLIANCE FOR BRIEFS                 44

CERTIFICATE OF SERVICE                                          46

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Ackerman v. W. Elec. Co.*,
  643 F. Supp. 836 (N.D. Cal. 1986), *aff'd*, 860 F.2d 1514
  (9th Cir. 1988) .................................................................. 32

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) .................................... 35, 36

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986) ................................................... 20, 22

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of
  Am.*,
  139 S. Ct. 1446 (2019) ...................................................... 6

*Draper v. Rosario*,
  836 F.3d 1072 (9th Cir. 2016) ......................................... 16

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ...................................... 20, 21

*Fischer v. SJB-P.D. Inc.*,
  214 F.3d 1115 (9th Cir. 2000) ......................................... 32

*FMC Corp. v. Varonos*,
  892 F.2d 1308 (7th Cir. 1990) ......................................... 19

*Gonzales v. Free Speech Coal.*,
  408 F.3d 613 (9th Cir. 2005) ........................................... 16

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) .................................... 21, 22

*Henry v. Gill Industries, Inc.*,
  983 F.2d 943 (9th Cir. 1993) ................................. 36, 37, 38

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................ *passim*

*Ibrahim v. U.S. Dep't of Homeland Sec.*,
  912 F.3d 1147 (9th Cir. 2019) ....................................................... 27

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993) ................................................. 33, 34, 35

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ...................................... 31, 32, 39, 40

*Lowery v. Rhapsody Int'l, Inc.*,
  75 F.4th 985 (9th Cir. 2023) ........................................................... 16

*Manhart v. City of L.A.*,
  652 F.2d 904 (9th Cir. 1981), *vacated on other grounds,*
  461 U.S. 951 (1983) ........................................................................ 37

*McGinnis v. Kentucky Fried Chicken*,
  51 F.3d 805 (9th Cir. 1994) ................................................... *passim*

*Meier v. Colvin*,
  727 F.3d 867 (9th Cir. 2013) .......................................................... 16

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ..................................................... 23, 24

*Northeast Women's Ctr. v. McMonagle*,
  889 F.2d 466 (3d Cir. 1989) ................................................ 17, 18, 19

*Odima v. Westin Tucson Hotel*,
  53 F.3d 1484 (9th Cir. 1995) .......................................................... 27

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
  51 F.4th 1125 (9th Cir. 2022) ......................................................... 13

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
  No. 20-16068, 2022 WL 13613963
  (9th Cir. Oct. 21, 2022) .................................................................. 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
735 F. App'x 241 (9th Cir. 2018) ..................................................5, 6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224
(9th Cir. 2018) ..................................................................................5

*Quesada v. Thomason*,
850 F.2d 537 (9th Cir. 1988) ........................................................21

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ................................................. 17, 19

*Sablan v. Dep't of Fin. of N. Mariana Islands*,
856 F.2d 1317 (9th Cir. 1988) ................................................. 36, 37

*Serin v. N. Leasing Sys., Inc.*,
No. 7:06-CV-1625, 2011 WL 1467560 (S.D.N.Y. April
19, 2011), *aff'd*, 501 F. App'x 39 (2d Cir. 2012)..............................20

*Shakey's Inc. v. Covalt*,
704 F.2d 426 (9th Cir. 1983) ........................................................37

*Sorenson v. Mink*,
239 F.3d 1140 (9th Cir. 2001) ......................................................28

*Sys. Mgmt., Inc. v. Loiselle*,
154 F. Supp. 2d 195 (D. Mass. 2001) ...........................................20

*United HealthCare Corp. v. Am. Trade Ins. Co.*,
88 F.3d 563 (8th Cir. 1996) ..........................................................26

*Valadez v. Aguallo*,
No. C 08-03100 JW, 2009 WL 10680866 (N.D. Cal. Dec.
10, 2009), *aff'd,* 433 F. App'x 536 (9th Cir. 2011) ..........................19

*Vargas v. Howell*,
949 F.3d 1188 (9th Cir. 2020) ................................................. 21, 22

*Wallis v. Burlington N. Santa Fe Ry. Co.*,
   680 F. App'x 515 (9th Cir. 2017) ..................................................... 23

## Statutes and Rules

18 U.S.C. § 1964(c) ................................................................. 26

42 U.S.C. § 1988 ............................................................. 18, 20

Federal Rule of Civil Procedure 60 .................................... 42

Federal Rule of Evidence 1006 .................................... 35, 37

N.D. Cal. Civ. L.R. 54-5(b)(2) ............................................. 33

**INTRODUCTION**

After nearly four years of hard-fought litigation and a six-week jury trial, the jury issued a verdict that was "overwhelmingly in plaintiffs' favor." 1-SER-41. Plaintiffs were awarded over $2.4 million in compensatory and punitive damages, as well as a permanent injunction against all but one Defendant.[1] 2-ER-49-58. Plaintiffs' "overwhelming" success continued in this Court where, despite multiple consolidated appeals raising a dozen discrete issues, Plaintiffs' judgment was affirmed except for one claim under the Federal Wiretap Act. This claim amounted to only $90,000 in damages, or less than 4% of Plaintiffs' total monetary recovery. In recognition of Plaintiffs' success at trial, the District Court awarded Plaintiffs $12,782,891.25 in attorneys' fees and $998,119.17 in non-statutory costs under multiple statutes, including civil RICO and various state laws. 1-ER-2.

---

[1] For ease, all of the plaintiffs are collectively referred to as "Plaintiffs." Similarly, Plaintiffs refer to Defendants-Appellants Center for Medical Progress, BioMax Procurement Services, LLC, David Daleiden, Gerardo Adrian Lopez, Albin Rhomberg, Susan Merritt, and Troy Newman collectively as "Defendants."

Defendants' appeal does not challenge the central factual findings supporting the fee award, such as the District Court's determinations that: (1) the hourly rates awarded for Plaintiffs' counsel were reasonable (1-ER-9-10), (ii) the hours spent by Plaintiffs' counsel were reasonable (1-ER-14-17), (iii) Plaintiffs achieved excellent results (1-ER-10-12), and (iv) Plaintiffs' claims shared a "common core of evidence" such that Plaintiffs were entitled to recover fees spent on ultimately unsuccessful claims or theories of damages and on claims that did not independently provide for attorneys' fees (1-ER-11-12). Instead, Defendants contend that the fee award is disproportionate to the damages Plaintiffs obtained; that the fee award should be reduced or eliminated because this Court reversed less than 4% of Plaintiffs' damages; and that the trial court erred in refusing to require Plaintiffs' counsel to produce the underlying timesheets supporting their fee claim.

Because each of these arguments is foreclosed by decisions of this Court, the Court should affirm the District Court's award of fees and costs.

## JURISDICTIONAL STATEMENT

Plaintiffs agree with Defendants' statement of jurisdiction.

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the Addendum to this brief.

## ISSUES PRESENTED

1.    Did the District Court abuse its discretion in setting the amount of attorneys' fees and costs given (i) its finding that the November 15, 2019 jury verdict was "overwhelmingly in plaintiffs' favor"; (ii) case law rejecting a proportionality requirement for attorneys' fees in civil RICO actions (and analogous civil rights cases); and (3) the fact that Plaintiffs obtained significant non-monetary relief?

2.    Must the awards of attorneys' fees and costs be reduced or eliminated altogether merely because this Court reversed on one claim representing less than 4% of Plaintiffs' monetary damages, when that claim is related to the many other claims on which Plaintiffs prevailed?

-3-

3.     Did the District Court abuse its discretion in awarding attorneys' fees and costs based on (i) detailed declarations submitted by Plaintiffs' attorneys and (ii) the District Court's "intimate knowledge" of the complexities of the case, without also requiring Plaintiffs' counsel to produce their underlying timesheets?

## STATEMENT OF THE CASE

### A.    Pre-Trial Proceedings

Plaintiffs brought this action more than eight years ago to hold Defendants responsible for an elaborate, multi-year scheme in which they first created a fake fetal tissue procurement company and then produced and used false government identification to infiltrate and secretly film Plaintiffs' staff at private reproductive healthcare conferences organized by both Planned Parenthood and the National Abortion Federation.    *See generally* 2-SER-201-313.    Plaintiffs asserted common-law claims for fraud, trespass, and breach of contract, as well as statutory claims for violating civil RICO, the federal eavesdropping statute, and the eavesdropping statutes of California, Florida, and Maryland.  Four of these statutes—civil RICO, the federal

wiretapping statute and the wiretapping statutes of Florida and Maryland—provide that a successful litigant is entitled to receive its reasonable attorneys' fees and costs in bringing suit. *Id.*

The case went through multiple stages of briefing, appeals, and discovery disputes in the years prior to trial.

Plaintiffs filed their initial complaint in January 2016, and a First Amended Complaint two months later. 4-ER-606, -610; 2-SER-201-313. Defendants moved to dismiss all 15 claims for relief. The court denied Defendants' motion but narrowed Plaintiffs' RICO claim. 1-SER-142-189.

Defendants also filed anti-SLAPP motions to strike, which contended that Plaintiffs' complaint improperly attacked Defendants' First Amendment activity. 3-ER-286, 4-ER-612, -613. The district court denied the motions, and Defendants appealed to this Court. 1-SER-189-197. After hearing oral argument and requesting further briefing on certain issues, this Court affirmed. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018); *Planned Parenthood Fed'n of*

*Am., Inc. v. Ctr. for Med. Progress*, 735 F. App'x 241 (9th Cir. 2018).

Defendants then filed petitions for rehearing and rehearing en banc,

followed by a petition for a writ of certiorari, which were all denied. 4-

ER-632; *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,

139 S. Ct. 1446 (2019).

Defendant Daleiden then moved to disqualify Judge Orrick,

claiming bias in part because of the judge's pre-appointment board

membership for a charitable organization that housed a Planned

Parenthood health center maintained by a Planned Parenthood

affiliate. 3-ER-293-294; 4-ER-620; 1-SER-137-142. A randomly

assigned judge denied the motion. 1-SER-137-142. Defendants then

filed a petition for writ of mandamus attacking this ruling, which this

Court summarily denied after requesting an opposition. 1-SER-135-

136.

Discovery in this case was extensive. Defendants propounded

nearly 400 document requests, over 100 interrogatories, and over 100

requests for admissions. 3-ER-287-288, -315. Defendants also filed

numerous discovery motions before the magistrate judge assigned to

the case and, more often than not, challenged the magistrate's discovery orders before the district court. 3-ER-289-293, -316-321. Plaintiffs also filed multiple discovery motions. The discovery disputes ranged from challenges involving security-related redactions of names on Plaintiffs' documents to challenges to Defendants' privilege assertions. *Id.* The parties took 52 depositions of 39 fact witnesses and 13 experts at locations across the country. 3-ER-322, -340-42.

Following discovery, Defendants filed multiple motions for summary judgment and related motions. Plaintiffs also moved for summary judgment. In a 137-page order, the district court granted partial summary judgment to Plaintiffs on several issues—Daleiden and BioMax's liability for certain breach-of-contract claims, Defendants' public-policy defense to Plaintiffs' breach-of-contract claims, and BioMax, Daleiden, and Merritt's liability for certain trespass claims. 4-ER-477-479, -511. While the court denied most of Defendants' contentions, it limited Plaintiffs to two categories of damages caused directly by Defendants' conduct. 4-ER-460-461. In

addition, the court also granted summary judgment to Lopez, Merritt, Rhomberg, and Newman on certain trespass and breach-of-contract claims.  4-ER-575-577.

### B.    Plaintiffs' Success at Trial

In November 2019, after a six-week jury trial, the jury returned a verdict for Plaintiffs on all counts, including fraud, trespass, breach of contract, unlawful recording under the federal, California, Florida, and Maryland wiretap statutes, and violations of civil RICO.  1-SER-89-134.  The jury awarded Plaintiffs $1,555,084 in compensatory, nominal, and statutory damages and $870,000 in punitive damages. *Id.*

In April 2020, the District Court found for Plaintiffs on their California Unfair Competition Law claim and entered an injunction against all Defendants (except one) prohibiting them from (i) entering or attempting to enter one of Plaintiffs' conferences or health centers through misrepresentation and (ii) recording certain private meetings and areas without consent.  1-SER-41-88; 2-ER-49-58.

Defendants filed a number of post-trial motions for judgment as a matter of law, for a new trial, and to amend the Judgment—all of which were denied.  3-ER-297; 4-ER-708, -712.

## C.  Plaintiffs' Motion for Attorneys' Fees and Costs

Plaintiffs' fee motion sought fees only for the time spent by the core team of 12 timekeepers (plus two in-house counsel), rather than for each of the 130+ attorneys who worked on the case at some point in the almost five years between the filing of the complaint and the filing of the fee motion.[2]  3-ER-309-310.  Each attorney reviewed his or her own time records and broke the recorded time into nine different phases of the litigation.  3-ER-307-432.[3]  Each attorney submitted a

_____

[2]  This core team consisted of ten attorneys and two legal assistants.

[3]  The nine phases of the litigation consisted of: (1) preparation of the Complaint and work successfully defeating in the trial court the pleadings motions filed by Defendants; (2) Defendants' unsuccessful interlocutory appeal from the denial of their anti-SLAPP motions; (3) pre-trial discovery; (4) Defendants' unsuccessful motion to disqualify the District Court and the mandamus proceedings relating thereto; (5) the parties' cross-motions for summary judgment; (6) preparation for trial; (7) trial; (8) post-trial proceedings on the merits (including Plaintiffs' successful efforts to obtain injunctive relief and defeat Defendants' post-trial motions); and (9) work on the attorneys' fees motion.

declaration explaining the hours they worked and tasks they completed during each phase. *Id.*[4]

Each attorney also exercised independent billing judgment with respect to their own hours; for example, Mr. Mayer did not seek reimbursement for days he spent attending (but not participating at) the six-week trial. 3-ER-352-353. In addition, to account for any potential inefficiencies or duplication, Plaintiffs voluntarily reduced the fees sought by 25%. 3-ER-310.

In response, Defendants filed an administrative motion seeking to compel Plaintiffs' counsel to produce their underlying timesheets. 2-ER-268-276. In opposing the motion, Plaintiffs explained that such production was unnecessary under Ninth Circuit precedent and would cause an undue burden on Plaintiffs' counsel to redact hundreds of pages of timesheets for privileged or otherwise protected information

---

[4] Although the legal assistants did not submit declarations, one of the billing attorneys submitted a declaration describing the work they performed. ER-367.

-10-

(which would necessarily greatly diminish the value of the timesheets). 1-SER-35-40.

The District Court denied Defendants' motion, but noted that it was "not preclud[ing] defendants from identifying particular tasks (or parts of the phases as broken down by plaintiffs) about which they believe they or the Court do not have sufficiently detailed information when they oppose the motion for fees. They may explain at that time why there is insufficient information to test the reasonableness of the fees claimed by plaintiffs for those tasks." 1-ER-22.

Defendants opposed Plaintiffs' motion for attorneys' fees and costs, but, as the District Court noted, did not submit any "evidence from their counsel to support an argument that plaintiffs engaged in unnecessary duplication of effort at any stage of this litigation for which plaintiffs seek compensation—not on any particular motion, in any deposition, in any hearing or case management conference, or during trial." 1-ER-15. Instead, they relied heavily on an expert, whose findings the district court rejected. 1-ER-15-17; 2-ER-128, -135-

155. Defendants do not attack this aspect of the trial court's ruling on appeal.

The District Court largely granted Plaintiffs' motion, subject to a few modifications regarding certain attorneys' hourly rates, the amount of fees recoverable for the work of the two in-house counsel, and costs related to executive security at trial. 1-ER-6-20. The fees were awarded under civil RICO, the federal wiretapping statute, and the wiretapping statutes of Florida and Maryland. 1-ER-10. After Plaintiffs submitted a revised fee request consistent with the District Court's Order, the Court awarded Plaintiffs $12,782,891.25 in attorneys' fees and $998,119.17 in non-statutory costs. 1-ER-2.[5]

### D. Defendants' Appeal on the Merits

After the trial court entered judgment, Defendants filed four separate appeals raising a dozen discrete issues. In October 2022, the Ninth Circuit affirmed the entire Judgment, except with respect to

---

[5] On appeal, Defendants do not challenge the district court's award of statutory or non-statutory costs on any ground unique to those awards.

Plaintiffs' Federal Wiretap Act claim and the $90,000 in corresponding statutory damages. *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022); *Planned Parenthood Fed. of Am., Inc. v. Newman*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022). The Ninth Circuit then denied Defendants' petitions for rehearing en banc, and the Supreme Court denied Defendants' petitions for certiorari. *See* 4-ER-717-718.

### SUMMARY OF ARGUMENT

I.     The District Court's Order setting the amount of fees and costs should be affirmed because the District Court carefully and appropriately weighed the relevant factors, including Plaintiffs' counsel's hourly rates, the reasonableness of Plaintiffs' counsel's hours, and Plaintiffs' degree of success. Defendants do not challenge the District Court's analyses of these factors, let alone suggest how the District Court abused its discretion. While Defendants argue that the District Court's award is disproportionate to the monetary damages Plaintiffs recovered, there is no proportionality requirement under RICO's mandatory attorneys' fees provision. And because the same

standards apply in civil RICO cases as in civil rights fee-shifting cases, this Court's precedents declining to impose a proportionality requirement in those cases apply with equal force to this case. Moreover, Defendants' proportionality argument ignores the injunctive relief Plaintiffs obtained. In contrast, the District Court determined that, if required to address proportionality, the fee award was proportionate to Plaintiffs' monetary and injunctive success— another finding Defendants do not contest. *See* Part I, *infra*.

II. The fee award need not be revised or eliminated merely because this Court overturned a single cause of action representing less than 4% of Plaintiffs' total monetary damages. Defendants do not (and cannot) dispute that the overturned cause of action (under the Federal Wiretap Act) was factually related to the affirmed causes of action. Accordingly, under Supreme Court precedent, Plaintiffs are entitled to their fees for prosecuting the Federal Wiretap claim. *See* Part II, *infra*.

III. Finally, the District Court did not abuse its discretion when it declined to require Plaintiffs to produce their underlying

-14-

timesheets. Plaintiffs supported their fee request with extensive evidence, including declarations from each attorney describing the various tasks they performed during each phase of the litigation. Plaintiffs also provided detailed charts setting forth the precise hours requested for each attorney for each phase of the litigation. Plaintiffs' submissions accorded with precedent from this Court holding that a plaintiff is not required to produce underlying timesheets in order to receive a fee award. Instead, the party need only submit sufficient information to enable the opposing party to contest, and the trial court to determine, the reasonableness of counsel's hours. The district court correctly found that Plaintiffs had met this requirement and, moreover, that requiring counsel to produce their timesheets would be unduly burdensome in light of the time necessary to redact privileged information. Defendants do not challenge either of these findings, nor did they accept the trial court's invitation to identify specific areas where production of the timesheets was necessary. Moreover, the District Court did not blindly accept Plaintiffs' declarations and

summaries, but tested their submissions against its own personal knowledge of the case. *See* Part III, *infra*.

## STANDARD OF REVIEW

A district court's award of attorneys' fees and costs is reviewed for "abuse of discretion." *See Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 991-95 (9th Cir. 2023) (attorneys' fees); *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016) (costs). To establish an abuse of discretion, an appellant must show that the district court "fail[ed] to apply the correct legal rule or its application of the correct legal rule [was] illogical, implausible, or without support in inferences that may be drawn from facts in the record." *Meier v. Colvin*, 727 F.3d 867, 869-70 (9th Cir. 2013). This is a "highly deferential standard" that is "limited to assuring that the district court's determination has a basis in reason." *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005).

## ARGUMENT

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN SETTING THE AMOUNT OF FEES AND COSTS.

Defendants first argue that the District Court abused its

-16-

discretion because the awarded fees and costs were "more than five times the amount of damages" that Plaintiffs received, which Defendants contend is improperly disproportionate.  Appellants' Opening Brief (AOB) 17-19.  This contention is based on the assertion that "[a]n award of attorneys' fees and non-statutory costs must ordinarily be proportional to the amount of damages awarded."  AOB at 9.  However, as Defendants elsewhere acknowledge, multiple courts of appeals "have held that an award of attorneys' fees under RICO need not be proportionate to the amount of damages awarded in light of the public interest matters that are advanced through civil prosecutions of RICO cases."  AOB at 18 (citing *Northeast Women's Ctr. v. McMonagle*, 889 F.2d 466 (3d Cir. 1989) and *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)).

In *McMonagle*, for example, the plaintiff (a medical facility that provided abortions, pregnancy testing, and other gynecological services) brought RICO and trespass claims against a large number of anti-abortion defendants who disrupted the plaintiff's operations by harassing its patients and employees, trespassed on its property, and

-17-

damaged medical equipment. 889 F.2d at 467-68. The plaintiff was ultimately successful against 27 of the 42 defendants on its RICO claim and against 24 defendants on its trespass claim. *Id.* at 468. The jury awarded the plaintiff $887 in damages for the RICO violation (trebled to $2,661) and $42,087.95 in compensatory damages for the trespass claim. *Id.* The trial court awarded the plaintiff $64,946.11 in fees and costs. *Id.* at 470.

On appeal, the defendant argued that this award was disproportionate to the $887 that the plaintiff had recovered in RICO damages. *Id.* at 471. But the Third Circuit rejected this argument. Looking to case law interpreting attorneys' fees awards in civil rights litigations under 42 U.S.C. § 1988, the court found that there was "nothing in the language or the legislative history of either § 1988 or [the RICO statute] to support the application of a proportionality rule in the latter, but not the former." *Id.* at 474. To the contrary, "like § 1988, the attorneys' fee clause of [the RICO statute] was designed to encourage private litigants to promote the policies underlying the substantive legislation." *Id.* In particular, civil RICO's fee-shifting

provision serves the purpose of "encouraging private citizens to enforce the objectives of the RICO statute . . . by ensuring that the plaintiff's recovery will not be diminished by counsel fees." *Id.* The court further noted that, if Congress had believed "that attorneys' fees should be awarded only in some proportion to the plaintiff's damages, it could have easily eliminated or modified the attorneys' fees provision of § 1964(c)." *Id.*

Numerous other courts analyzing civil RICO have reached the same conclusion as *McMonagle*. *See Rosario v. Livaditis*, 963 F.2d 1013, 1019 (7th Cir. 1992) ("we do not believe that *Hensley* nor our own opinions following *Hensley* require a trial court to grant attorney's fees to a prevailing plaintiff in direct proportion to the overall relief obtained"); *FMC Corp. v. Varonos*, 892 F.2d 1308, 1316 (7th Cir. 1990) ("Additionally, we question whether [the rule of proportionality] applies in the context of awards under the RICO fee-shifting provision, given recent precedent."); *Valadez v. Aguallo*, No. C 08-03100 JW, 2009 WL 10680866, at *4-5 (N.D. Cal. Dec. 10, 2009), *aff'd,* 433 F. App'x 536 (9th Cir. 2011) (awarding $123,480 in attorneys'

-19-

fees to plaintiffs who recovered nominal damages of $1 on their civil RICO claim); *Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 207 (D. Mass. 2001) ("[T]his Court notes that the obvious policy of the RICO statute is deterrence, which would best be served by fully compensating private attorneys general, no matter how limited their success."); *Serin v. N. Leasing Sys., Inc.*, No. 7:06-CV-1625, 2011 WL 1467560, at *13 (S.D.N.Y. April 19, 2011), *aff'd*, 501 F. App'x 39 (2d Cir. 2012) (in a RICO action, "[t]here is not a requirement that attorney's fees awards be proportional to the recovery obtained") (citations omitted).

This Circuit has not directly addressed whether a proportionality requirement applies in civil RICO cases. But it has rejected a strict proportionality requirement in cases applying Section 1988. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002) ("The Supreme Court . . . has rejected the notion that attorney's fees in civil rights cases should be proportionate to the amount of damages a plaintiff recovers.") (citing *City of Riverside v. Rivera,* 477 U.S. 561 (1986)). For example, *Fair Housing of Marin* affirmed a fee

award of $508,606.78, even though the plaintiff had recovered only $98,777 in compensatory and punitive damages—essentially the same 5:1 ratio Defendants complain of here. 285 F.3d at 902, 908. Thus, *Fair Housing of Marin* flatly refutes Defendants' claim that a fee award more than four times the amount of damages is "excessive" "as a matter of law." AOB at 13.

Other Ninth Circuit civil rights cases are in accord. *See Vargas v. Howell*, 949 F.3d 1188, 1196-97 (9th Cir. 2020) ("It is *not* per se unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients.") (emphasis in original) (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013)); *Gonzalez*, 729 F.3d at 1209-10 ("It is not per se unreasonable for attorneys to receive a fee award that exceeds the amount recovered by their clients. This is especially true in civil rights cases, where the dollar amount lawyers recover for their clients is not the sole measure of the results the prevailing parties' attorneys obtained."); *Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988) ("The district court

should not have reduced the attorney's fees simply because the damage award was small.").

Defendants do not attempt to distinguish these cases. Instead, they argue that this Court in *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805 (9th Cir. 1994)—a private suit for disability discrimination, not a RICO case-–"rejected the notion that a statute's public interest concerns could justify a grossly-disproportionate award of attorneys' fees." AOB at 18. Defendants greatly overstate the holding of *McGinnis*.

First and foremost, as a decision of a federal court of appeals, *McGinnis could* not possibly have mandated a proportionality rule in civil rights cases, as U.S. Supreme Court precedent is directly to the contrary. *See City of Riverside*, 477 U.S. 561 (upholding $245,456.25 attorneys' fee award even though plaintiff recovered only $33,350 in damages). Moreover, Defendants' interpretation of *McGinnis* contradicts *all* of the post-1994 Ninth Circuit cases cited above—including *Fair Housing of Marin*, *Vargas*, and *Gonzalez*—which reject

the proportionality requirement Defendants seek to impose. *See* pp. 19-21, *supra*.

Far from imposing a proportionality requirement, *McGinnis* held only that a district court abuses its discretion if it "expressly refuse[s] to relate the extent of success to the amount of the fee award." 51 F.3d at 810. In contrast, where a district court "consider[s] the relationship between the amount of the fee awarded and the results obtained," "[n]othing more [is] required." *Wallis v. Burlington N. Santa Fe Ry. Co.*, 680 F. App'x 515, 517-18 (9th Cir. 2017) (citing *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 225 (9th Cir. 2013)). Defendants do not—and cannot—dispute that the District Court considered Plaintiffs' degree of success in setting the award, thereby satisfying *McGinnis*. 1-ER-10-12.

Finally, even if proportionality were a concern, Defendants ignore the non-monetary benefit of the injunction Plaintiffs obtained. *See* AOB at 17 ("Here, the total amount of attorneys' fees and all costs awarded was $13,950,775.96 [citation] after an award of damages totaling $2,425,084."). *Morales v. City of San Rafael*, 96 F.3d 359 (9th

-23-

Cir. 1996), is illustrative. In *Morales*, the plaintiff prevailed on a Section 1983 claim against the City of San Rafael and was awarded $17,500 in damages, and the district court limited its award of attorneys' fees to only $20,000. *Id.* at 360-61. This Court reversed, noting that the district court erred in "trying to avoid a figure 'too much more' than the damages award." *Id.* at 362. The Court ordered the district court to "consider not only the monetary results but also the significant nonmonetary results [plaintiff] achieved for himself and other members of society." *Id.* at 365; *see id.* at n.12 ("The district court should, as we stated in *McGinnis*, consider what [plaintiff's] attorney did for his 'actual client.' However, the assessment of the 'results obtained' by the actual client in a civil rights action should not be limited to the damages award that person received but *also requires consideration of the nonmonetary benefits the plaintiff personally gains from the lawsuit*.") (emphasis added) (internal citation omitted).

Here, Plaintiffs' nonmonetary benefits from the litigation, i.e., the permanent injunction they obtained, further support the fee and cost award. As the District Court noted: "the injunctive relief, secured

-24-

in part under the federal and Florida recording statutes, also weighs in favor of the fee award even though the scope of the injunctive relief awarded was narrower than requested by plaintiffs." 1-ER-11. Defendants do not challenge the District Court's finding that the injunctive relief further justified the attorneys' fee award.

In contrast to this case, the *McGinnis* plaintiff obtained no injunctive relief. Defendants' claim that "[t]here is no practical difference between the situation in *McGinnis* and the situation here" (AOB at 19) ignores this critical distinction. A supposed lack of proportionality accordingly is no basis to disturb the district court's fee award in this case.

## II. THIS COURT'S REVERSAL ON ONE CLAIM AND ITS CORRESPONDING VACATUR OF LESS THAN FOUR PERCENT OF THE DAMAGES DOES NOT WARRANT REDUCTION OF THE FEES AND COSTS AWARDS.

Defendants next argue that this Court's reversal of the Federal Wiretap Act claim—representing less than 4% of Plaintiffs' total

damages award[6]—warrants either "a reduction or outright denial of attorneys' fees, as well as statutory and non-statutory costs." AOB at 15-16. Defendants' argument is based on little more than *McGinnis*, which as discussed above (a) is distinguishable for multiple reasons; and (b) has been limited by several more recent decisions of this Court. *See* pp. 22-23, *supra*. Moreover, Defendants' unsupported suggestion that a 4% reduction in damages somehow requires "outright denial" of Plaintiffs' fee claim ignores the fact that "an award of reasonable attorney's fees and costs under RICO is mandatory." *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 575 (8th Cir. 1996) (citing *Scholastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993); *Quick v. Peoples Bank of Cullman Cnty.*, 993 F.2d 793, 799 (11th Cir. 1993); *Varonos*, 892 F.2d at 1315). In the words of the statute, a civil RICO plaintiff "*shall recover* threefold the damages he sustains *and the cost of the suit, including a reasonable attorney's fee*." 18 U.S.C. § 1964(c) (emphasis added).

---

[6]  The Federal Wiretap Act claim accounted for $90,000 of the $2,425,084 damages award—3.71%.

Nor are Defendants entitled to a reduction in the fee award merely because their appeal resulted in a 4% reduction in damages. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (9th Cir. 2019) (citing *Hensley*, 461 U.S. at 435). Claims are "related" for purposes of attorneys' fees motions when they "involve a common core of facts or will be based on related legal theories. . . . Thus, the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised." *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)).

These principles foreclose reduction of the fee award here. Defendants do not even attempt to argue that the Federal Wiretap Act claim is unrelated to Plaintiffs' successful claims. Nor could they.

-27-

Plaintiffs' Federal Wiretap Act claim involved the same common core of facts as Plaintiffs' successful RICO and state wiretapping claims; namely, Defendants' fraudulent scheme to infiltrate Plaintiffs' conferences and health centers and secretly record Plaintiffs' staff. Indeed, Defendants themselves acknowledge that all 15 claims asserted in Plaintiffs' First Amended Complaint "aris[e] out of the same course of events." AOB at 8. Accordingly, the fee award should not be reduced simply because one of Plaintiffs' numerous claims was unsuccessful. *See Hensley*, 461 U.S. at 440.

Defendants' argument also ignores the "excellent results" Plaintiffs obtained in litigation as a whole. *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.") (quoting *Hensley*, 461 U.S. at 435). While this Court reversed the judgment as to one claim, it simultaneously upheld more than 96% of Plaintiffs' damages award, as well as the district court's grant of injunctive relief. A minimal reduction in damages does not warrant a reduction in Plaintiffs' fee award.

### III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN AWARDING FEES AND COSTS WITHOUT REQUIRING PRODUCTION OF TIMESHEETS.

Finally, Defendants contend that the District Court abused its discretion in declining to order Plaintiffs to produce their timesheets. After Plaintiffs filed their fee motion, Defendants filed an administrative motion seeking discovery of the individual timesheets prepared by Plaintiffs' counsel.  2-ER-268-276.  In opposing the motion, Plaintiffs noted that they had produced 12 attorney declarations, totaling 132 pages, that, as the district court found, "describe[] the specific tasks [each attorney] worked on in roughly nine different phases of this case and how many hours each of them spent on these tasks." 1-SER-37; 1-ER-21.  Accordingly, the court denied the motion, finding that "defendants have enough information to oppose the fee motion," as they "can identify—both through the declarations but also through their own counsels' recollections of many of the events (depositions, hearings, meet and confers, trial proceedings, etc.)—where they believe there was an unreasonable amount of time sought or duplication of effort." 1-ER-21-22.  Moreover, the court also

found that "[g]iven the very detailed nature of the declarations [and a chart Plaintiffs prepared summarizing the time spent], there is only limited potential utility in providing the defendants access to the underlying time sheets" that did not "merit requiring Plaintiffs to undertake the time-intensive effort to redact attorney-client information" from hundreds of pages of time sheets. 1-ER-22. Nevertheless, the district court left the door open for Defendants to "identify[] particular tasks (or parts of the phases broken down by the plaintiffs) about which they believe they or the Court do not have sufficiently detailed information . . . . to test the reasonableness of the fees claimed by plaintiffs for those tasks." *Id.*

As the district court noted in granting Plaintiffs' fee motion, "Defendants did not take my advice to heart." 1-ER-15. They neither challenged Plaintiffs' counsels' hours as duplicative or unnecessary "[n]or did they identify any particular phase or segment of this litigation for which they could not make these sorts of targeted challenges to plaintiffs' hours without underlying billing records." 1-ER-15-16.

Nor have Defendants done so on appeal.  Indeed, Defendants do not challenge *any* of the factual findings made by the district court in declining to require Plaintiffs to produce the underlying time sheets. Thus, this Court must assume that: (1) the summaries prepared by Plaintiffs' counsel were sufficiently detailed to enable Defendants to challenge the reasonableness of the time spent by Plaintiffs' counsel; (2) in light of the detailed information submitted by Plaintiffs in support of their fee motion, producing the timesheets would have been (at most) of "only limited potential utility" (1-ER-22); and (3) that this limited potential utility did not justify requiring Plaintiffs to manually review hundreds of pages of billing records to redact privileged information.

Defendants nevertheless maintain that the District Court abused its discretion in awarding fees and costs without requiring production of Plaintiffs' counsel's actual timesheets.  AOB at 19-22. To support this contention, Defendants assert that "[s]ummaries of the time incurred in litigating a case are normally insufficient" to support a fee award.  AOB 19; *see* AOB at 10 ("A claim of attorneys' fees must

-31-

ordinarily be supported by timesheets made at or near the time of the legal work performed.").

These contentions contradict multiple Ninth Circuit cases. For example, in *Lobatz v. U.S. Western Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir. 2000), this Court "decline[d] to adopt a rule that a district court must grant a request for discovery of contemporaneous time records in every case in which attorney fees are sought," and held that "the district court did not abuse its discretion by not examining class counsel's contemporaneous time records" where it "carefully reviewed the . . . summaries it submitted." *Id.* at 1148-49. Likewise, in *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000), the Court held that that plaintiff had provided sufficient information to support a fee award where he provided "a summary of the time spent on a broad category of tasks, such as pleadings and pretrial motions (16.5 hours), settlement (4.2 hours), and court appearances (1.5 hours)." *Id.* at 1121; *see Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 863 (N.D. Cal. 1986), *aff'd*, 860 F.2d 1514 (9th Cir. 1988) ("the Ninth Circuit requires only that the affidavits be sufficient to enable the court to

consider all the factors necessary to determine a reasonable attorney's fee award"). These cases apply the general rule, set forth in *Hensley*, that "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." 461 U.S. at 437 n.12.[7]

Defendants do not cite, let alone attempt to distinguish, any of these cases. Instead, they cite a single attorneys' fee case, *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir. 1993), for the proposition that summaries are "normally insufficient" to justify a fee award. AOB at 19. That case will not bear the weight that Defendants place upon it.

In *Intel*, the trial court "made no findings that the hours expended were reasonable and that the hourly rates were customary,"

---

[7] Similarly, the Northern District Court's Local Rules require only "[a] statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained." N.D. Cal. Civ. L.R. 54-5(b)(2).

-33-

and, instead, "merely awarded the fees without elaboration." 6 F.3d at 623. This Court held that this procedure was "inadequate." *Id.* (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984)). Making matters worse, the "mere summaries of hours worked . . . made it very difficult to ascertain whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours." *Id.* at 623.

None of that is true here. While Defendants mischaracterize the summaries submitted by each of Plaintiffs' counsel as "conclusory" (AOB at 10), in fact the attorney declarations did not merely summarize hours but broke down the time spent on this case into separate phases and detailed what was done by each timekeeper during each phase of the case. *See* 3-ER-307-432. Moreover, in this case, unlike *Intel*, the district court expressly concluded that the summaries gave the defendant sufficient information to dispute Plaintiffs' fee request. And in this case, again unlike *Intel*, the District Court did not blindly accept that Plaintiffs' hours were reasonable based solely on Plaintiffs' declarations. As the District Court stressed:

-34-

It bears emphasis that I am not simply taking "at face value" the word of the plaintiffs regarding the number of hours expended on this case and the reasonableness of these hours. [Citation.] I have looked closely at the –detailed declarations and the Chart. A review of the docket in this case and my intimate knowledge of the complexity of the issue raised to Magistrate Judge Ryu and me in the different stages of litigation further support my conclusion that the hours sought – after the 25% discount – were reasonably incurred. Absent *any* evidence from defendants identifying specific unreasonableness in terms of subject matter or duplication of effort, I have an ample basis to conclude the hours sought are reasonable without requiring plaintiffs to produce underlying timesheets.

1-ER-17.

Defendants also argue that Plaintiffs' counsel's time summaries are "summary exhibit[s]" and thus the underlying time sheets should have been made available under Federal Rule of Evidence 1006. AOB at 19-20 (citing *Intel* and *Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996)). *Intel* is distinguishable for the reasons set forth above. And *Amarel* did not involve the use of attorney summaries in lieu of timesheets in the context of a post-trial fee motion, but rather discussed the proper procedure for offering summary exhibits at trial.

*Amarel*, 102 F.3d at 1516.[8]  Thus, *Amarel* noted that providing the underlying materials for summary exhibits is important "to give the opposing party an opportunity to verify the reliability and accuracy of the summary *prior to trial*."  *Id.* (emphasis added) (quoting *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir. 1984)).  That rationale has no relevance to a post-trial motion for attorneys' fees.

Defendants' argument also contradicts decades of caselaw—in addition to those authorities discussed above.  In *Henry v. Gill Industries, Inc.*, 983 F.2d 943 (9th Cir. 1993), for example, the plaintiff argued that the defendant was "required to provide detailed time and expense records" to establish its entitlement to attorneys' fees, and that affidavits were inadequate.  *Id.* at 946.  This Court rejected this argument, explaining that its precedents "have clearly established that an award of attorney's fees may be based on the affidavits of counsel, so long as they are 'sufficiently detailed to enable the court to

---

[8]  The summary exhibits at issue in *Amarel* were (i) a summary analysis of California and Thai rice prices and (ii) a graph "comparing a price-to-loan ratio to a stocks to use ratio for California rice," both of which were prepared by defendants' expert.  102 F.3d at 1516.

consider all the factors necessary in setting the fees.'" *Id.* (quoting *Williams v. Alioto,* 625 F.2d 845, 849 (9th Cir. 1980) (per curiam); *see also Sablan v. Dep't of Fin. of N. Mariana Islands,* 856 F.2d 1317, 1322 (9th Cir. 1988) ("sufficiently detailed to provide an adequate basis for calculating an award"); *Shakey's Inc. v. Covalt,* 704 F.2d 426, 435 (9th Cir. 1983) ("ample evidence to support the attorney's fee award"); *Manhart v. City of L.A.,* 652 F.2d 904, 908 (9th Cir. 1981) ("sufficiently detailed to provide a basis for the award"), *vacated on other grounds,* 461 U.S. 951 (1983). The *Henry* court noted that the district court did not err when it held that defendant's declarations "satisfied this requirement" because they "disclosed the nature of the services rendered in connection with unavailing efforts to obtain discovery, the amount of attorney time so consumed, and the rates at which this time was billed to the client." *Henry*, 983 F.2d at 946. Plaintiffs' counsel's declarations more than met this standard.

Moreover, like Defendants here, the plaintiff in *Henry* also argued that the defendant's counsel's affidavits were summaries of the time records subject to the requirements of Federal Rule of Evidence

1006. 983 F.2d at 946 n.1. But this Court rejected this argument, noting that the plaintiff had not even mentioned the line of cases holding that an attorneys' fees award could be based on affidavits of counsel, let alone distinguish them. *Id.* Defendants' similar failure to distinguish the cases cited above is equally fatal to their argument.

Finally, Defendants contend that, without the timesheets, "there was no way . . . to determine whether the declarations of Planned Parenthood attorneys were, in fact, an accurate summary of the timesheets." AOB at 20; *see id.* at 21 ("without being able to compare them to the timesheets, there was literally no way to know whether they were accurate"). This is simply not true. In the first place, the accuracy of the timesheets was verified by each timekeeper, under penalty of perjury. Moreover, as the district court noted, Defendants' counsel could determine the reasonableness of the time claimed by Plaintiffs' counsel by comparing that time with their own recollections (*see* 1-ER-21) and, of course, their own timesheets. Furthermore, the district court expressly stated that, "[h]ad defense counsel attested that there was serious duplication of effort or unnecessary hours spent

by plaintiffs' counsel in specific phases[,] . . . I could have ordered plaintiffs to produce timesheets for that specific phase or part of a phase." 1-ER-16 n.10. For example, Defendants "could have argued that in specifically identified meet and confers regarding identified discovery, plaintiffs' staffing was unreasonable." *Id.*[9]

But Defendants did not do so. As the District Court noted in its order, Defendants "**submitted no evidence from their counsel to support an argument that plaintiffs engaged in unnecessary duplication of effort at any stage of this litigation for which plaintiffs seek compensation—not on any particular motion, in any deposition, in any hearing or case management conference, or during trial.**" 1-ER-15 (emphasis in original). Given Defendants' failure to identify any specific issues with Plaintiffs' submissions, it was not an abuse of discretion for the District Court to grant Plaintiffs' motion without

---

[9] For example, this is precisely what Defendants did in opposition to Plaintiffs' motion for supplemental attorneys' fees, where they questioned the reasonableness of Mr. Perdue's claimed 130 hours for work opposing the Defendants' four petitions for certiorari based on Mr. Perdue's declaration. 1-SER-6-7.

requiring production of the timesheets. *See Lobatz*, 222 F.3d at 1148 ("The district court did not err in denying [appellant's] request for discovery of class counsel's contemporaneous time records.").[10]

## CONCLUSION

For the foregoing reasons, the district court's fees and costs awards should be affirmed.

---

[10] Defendants also claim that, without Plaintiffs' counsel's timesheets, there was no way for them "to determine the extent to which Planned Parenthood incurred legal fees for pursuing damages that the district court determined were not recoverable in its summary judgment order." AOB at 21. However, as discussed above, Plaintiffs were entitled to recover for time spent on ultimately unsuccessful causes of action and legal theories given the District Court's unchallenged finding that all of the claims Plaintiffs asserted and damages they sought were related. *See* Part II, *supra*.

Dated: May 17, 2024

Respectfully Submitted,

*/s/ Steven L. Mayer*

WILLIAM C. PERDUE
MEGHAN MARTIN
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
william.perdue@arnoldporter.com

STEVEN L. MAYER
SHARON D. MAYO
JEREMY T. KAMRAS
MATTHEW R. DITON
LIAM E. O'CONNOR
NINA LEVITEN
ARNOLD & PORTER
  KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111
(415) 471-3100
steve.mayer@arnoldporter.com

RHONDA R. TROTTER
OSCAR D. RAMALLO
ARNOLD & PORTER
  KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
rhonda.trotter@arnoldporter.com

BETH H. PARKER
PLANNED PARENTHOOD
  CALIFORNIA CENTRAL
  COAST
20 Laurel Street
Inverness, CA 94937
(415) 531-1791
bparker@ppnorcal.org

*Counsel for Plaintiffs-Appellees Planned Parenthood Federation of America, Inc., Planned Parenthood: Shasta-Diablo, Inc. (DBA Planned Parenthood Northern California), Planned Parenthood Mar Monte, Inc., Planned Parenthood of the Pacific Southwest, Planned Parenthood Los Angeles, Planned Parenthood/Orange and San Bernardino Counties, Inc., Planned Parenthood California Central Coast, Inc., Planned Parenthood Pasadena and San Gabriel Valley, Inc., Planned Parenthood Center for Choice, Planned Parenthood of the Rocky Mountains, and Planned Parenthood Gulf Coast*

**STATEMENT OF RELATED CASES**
**PURSUANT TO CIRCUIT RULE 28-2.**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

9th Cir. Case Number(s): 21-15124

The undersigned attorney or self-represented party states the following:

[ ]   I am unaware of any related cases currently pending in this court.

[ ]   I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[x]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*Planned Parenthood Federation of America, Inc., et al. v. Center for Medical Progress, et al.*, 23-04398 (9th Cir.), and *Planned Parenthood Federation of America, Inc., et al. v. Newman, et al.*, 24-00212 (9th Cir.), are consolidated appeals of the District Court's order denying Defendants' motion for relief from the Judgment under Federal Rule of Civil Procedure 60.

DATED: May 17, 2024.

/s/ *Steven L. Mayer*

STEVEN L. MAYER
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

9th Cir. Case Number(s): 21-15124

I am the attorney or self-represented party.

This brief contains 7,034 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x]    complies with the word limit of Cir. R. 32-1.

[ ]    is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ]    is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]    is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ]    complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ]    it is a joint brief submitted by separately represented parties;

[ ]    a party or parties are filing a single brief in response to multiple briefs; or

[ ]    a party or parties are filing a single brief in response to a longer joint brief.

[ ]    complies with the length limit designated by court order dated _____.

-44-

[  ]    is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

DATED: May 17, 2024.

_/s/ Steven L. Mayer_
STEVEN L. MAYER
_Counsel for Plaintiffs-Appellees_

**CERTIFICATE OF SERVICE**

On May 17, 2024, I caused the foregoing opposition to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate ACMS/ECF system. Participants in the case who are registered ACMS/ECF users will be served by the appellate ACMS/ECF system.

DATED: May 17, 2024.

_/s/ Steven L. Mayer_
STEVEN L. MAYER